IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DIANA GOODAVAGE AND ROBERT VINCENT WALTER,

    Plaintiffs,

v.

FIDUCIARY REAL ESTATE DEVELOPMENT (FRED) AND DANE COUNTY HOUSING AUTHORITY (DCHA),

    Defendants.

ORDER

Case No. 16-cv-714-wmc

Plaintiffs Diana Goodavage and Robert Vincent Walter filed this lawsuit against the Fiduciary Real Estate Development Company ("FRED") and Dane County Housing Authority ("DCHA"), claiming that they were unlawfully evicted from an apartment in retaliation for filing a small claims action against FRED. Plaintiffs seek reversal of their eviction, as well as damages and an informal hearing by the DCHA to reinstate their Section 8 Housing Choice Voucher. Because plaintiffs are proceeding without prepayment of the filing fee, however, the court is required to screen the complaint under 28 U.S.C. § 1915(e)(2) to determine, among other things, whether they have "a claim on which relief may be granted." Plus, the DCHA has filed a motion requesting that the court screen and dismiss this lawsuit with prejudice. (Dkt. #6.) Because plaintiffs are acting *pro se*, they are held to a "less stringent standard" in crafting pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, this court lacks jurisdiction to provide plaintiffs the relief they seek. Accordingly, this lawsuit will be dismissed, but without prejudice to plaintiffs' ability to pursue a claim related to the Section 8 voucher.

1

ALLEGATIONS OF FACT[1]

Plaintiffs Goodavage and Walter lived in an apartment together from October 2001 until November 19, 2010. During this time period, Goodavage was the named lessee, FRED was her landlord, and Walter apparently lived with Goodavage. Walter alleges that since 1993, the "household" has been receiving a Section 8 housing choice voucher, but he does not state which one of them was the recipient.[2]

The last lease between Goodavage and FRED ran from noon on November 1, 2009, to noon on October 31, 2010. Apparently FRED offered Goodavage $150 in incentives if she signed and returned a renewal form by August 15, 2010, which Goodavage did after making hand-written changes to the form and signing it. Although her proposed changes would have extended the end time and date of the lease by one day, FRED did not agree to the changes. Instead, FRED indicated to Goodavage that it would not renew the lease until the apartment passed inspection by the DCHA, which is

---

[1] For purposes of this order, the court assumes the following facts based on the allegations in plaintiffs' complaint when viewed in a light most favorable to plaintiffs. Nevertheless, plaintiffs' allegations are difficult to decipher, especially given that Walter alone signed the pleadings, and the allegations often refer to "I" or "my" without clarifying whether those allegations apply to plaintiff Goodavage as well. The court has noted instances where it was unclear whether Walter, Goodavage or both plaintiffs were involved. Additionally, as the complaint provides little detail, the court has included relevant facts described in the Wisconsin Court of Appeals' decisions related to this action. *See Goodavage v. Fiduciary Real Estate Dev.*, 2013 WI App 13, 345 Wis. 2d 848 (2012); *Fiduciary Real Estate Dev. Inc. v. Goodavage*, Case No. 2010-SC-10255 (Dane Cty. Cir. Ct. Nov. 1, 2010).

[2] Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, authorizes a rent assistance program that is run and regulated by the United States Department of Housing and Urban Development. HUD contracts with state and local public housing authorities to make money available for the payment of rent on behalf of low income individuals. 24 C.F.R. § 982.1(a). To participate in the program, one must apply to the public housing authority for admission. Those granted admission receive vouchers, which permit the holder to search for a suitable unit within the state, with the rental payment then negotiated under the rent assistance program. *Id.*

a requirement for Goodavage to continue participating in the DCHA's Section 8 rent assistance program.

Although the apartment did not pass DCHA's initial inspection on August 5, it did pass a re-inspection that took place in September. Afterwards, FRED sent Goodavage a letter stating that it would renew the lease effective November 1, 2010, on a month-to-month basis, but only if Goodavage signed and returned an enclosed renewal form by November 1, 2010. FRED also informed Goodavage that if she signed the renewal form, it would still provide her with the $150 in incentives.

At some point in August of 2010, rather than signing that form, Goodavage filed a small claims action against FRED based on an alleged breach of contract and entitlement to the $150 in incentives FRED had offered. After a court commissioner dismissed that case, Goodavage requested a trial before the circuit court. While her request for a trial was pending, FRED informed her that if she did not sign the renewal form, she would become a holdover tenant. Even then, FRED apparently advised that she could *still* sign the renewal form *and* receive the $150. Again, Goodavage chose not to sign the form.

When Goodavage's existing lease expired by its term on October 31, 2010, she still attempted to pay FRED rent for the month of November. At that point, FRED decided to commence the eviction process. *See Fiduciary Real Estate Dev. Inc. v. Goodavage*, No. 2010-SC-10255 (Dane Cty. Cir. Ct. Nov. 1, 2010). As he was not on the lease, Walter was neither named as a party to that proceeding, nor were there any publicly available records indicating that he was a party to any Wisconsin small claims or eviction actions in 2010. A state circuit court trial was held on November 19, 2010. While the

3

records of that trial indicate that all parties appeared, and the court received testimony and evidence, Walter claims that court only asked FRED about the lease, whose employees stated that they did not know who was on the lease. That day the court entered a judgment of eviction, which Goodavage appealed *pro se*.

The Wisconsin Court of Appeals affirmed Goodavage's eviction. *Fiduciary Real Estate Dev., Inc. v. Goodavage*, No. 2010AP3056, unpubl. slip op. (Wis. Ct. App. Dec. 22, 2011). The court held that Goodavage and FRED never entered into a new lease. The court also rejected Goodavage's claim under Wis. Stat. § 704.45(1)(c) that FRED retaliated against her for filing the small claims action, apparently because the state circuit court found that the evidence at the hearing did not suggest the eviction was retaliatory. The court further rejected Goodavage's argument on appeal that the circuit court erred in not permitting her son to testify at trial. While Goodavage filed a petition for review with the Wisconsin Supreme Court, that court dismissed the petition on March 12, 2012. *See Fiduciary Real Estate Dev. Inc. v. Goodavage*, No. 2010SC1022 (Wis. Mar. 12, 2012).

After the court of appeals affirmed the eviction, FRED turned back to Goodavage's breach of contract claim pending in the circuit court. It notified the court about the eviction and requested dismissal of Goodavage's claim on preclusion grounds. *See Goodavage v. FRED*, No. 2012AP934, 2013 WI App. 13 (Wis. Cir. Ct. Dec. 6, 2012). The circuit court then held a hearing and granted FRED's request in March of 2012. Goodavage appealed, and the Wisconsin Court of Appeals affirmed, reasoning that Goodavage did not adequately develop her arguments on appeal. That court also found

that FRED and Goodavage never formed a contract that would require FRED to pay her the incentives. *Id.* ¶ 26.

At some point during or after these proceedings (it is unclear when), the DCHA formally terminated Goodavage's Section 8 voucher. The details about the process are unclear, but plaintiffs allege that in October of 2010, Goodavage received a copy of a communication between FRED and the DCHA in which FRED claimed Goodavage "refused to sign a lease," a prerequisite for receiving the Section 8 voucher. At some point thereafter, the DCHA held an informal hearing related to Goodavage's participation in the Section 8 voucher program. Plaintiffs allege that they received notice of the hearing via email and not the U.S. mail. The complaint does not include any allegations about who actually appeared at this hearing, what happened at the hearing, or the outcome.

OPINION

Plaintiffs' complaint asks this court to dismiss the eviction proceeding, order FRED to pay damages, and order the DCHA to schedule another informal hearing to reinstate their Section 8 voucher. Unfortunately for plaintiffs, they do not state a claim that can proceed in federal district court.

I. **Eviction Proceeding**

As to plaintiffs' principal claim related to the eviction proceeding, lower federal courts are precluded by the *Rooker-Feldman* doctrine from reviewing state-court judgments, such as a denial of visitation or a state-court-ordered injunction or restraining order. The *Rooker-Feldman* doctrine prevents a party "complaining of an injury caused by

5

[a] state-court judgment" from seeking redress in a lower federal court. *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 291-92 (2005). *See also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). For the most part, litigants who feel that a state court proceeding has violated their federal rights must assert those rights through the state court system and, if unsuccessful, ultimately seek review of the final decision by the United States Supreme Court. *See Golden v. Helen Sigman & Assoc., Ltd.*, 611 F.3d 356, 361-62 (7th Cir. 2010); *T.W. by Enk v. Brophy,* 124 F.3d 893, 898 (7th Cir. 1997). Because plaintiffs' challenge to the legitimacy of the events surrounding the 2010 eviction does not suggest a federal claim distinct from their state eviction due process claim, it must be dismissed.

II.     Section 8 Voucher

Unlike plaintiffs' challenge to the eviction process, plaintiffs' challenge to the denial of a Section 8 voucher is not barred by the *Rooker-Feldman* doctrine. Even so, plaintiffs' factual allegations doom their claim. Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, provides that a rent assistance program is to be run and regulated by the United States Department of Housing and Urban Development ("HUD"). *Chesir v. Hous. Auth. City of Milwaukee*, 801 F. Supp. 244, 246 (E.D. Wis. 1992). HUD typically contracts with state and community public housing authorities to make money available locally for the payment of rent on behalf of a specified number of low income individuals. *Id.*; 24 C.F.R. § 982.1(a). To participate in such a program, one must apply to a public housing authority for admission. *Chesir*, 801 F. Supp. at 246. Those admitted receive Section 8 "vouchers." *Id.* A voucher permits the holder to search

for a suitable unit within the state, and the rental payment is negotiated under a rent assistance program. *Id.*; 24 C.F.R. § 982.1(a). Once awarded, a voucher allows location flexibility because it can be transferred to other states around the country. *Chesir*, 801 F. Supp. at 246; 24 C.F.R. Part 982, Subpart H.

Under this Section 8 program, public housing authorities must comply with regulations promulgated by the Department of Housing and Urban Development. 24 C.F.R. § 982.52(a). Moreover, the Department's regulations have the force of law and, if sufficiently specific and definite, they qualify as enforceable rights under § 1983. *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 431 (1987) (allowing tenants to use § 1983 to recover past overcharges violating rent-ceiling provision of Public Housing Act); *see also Price v. Pierce*, 823 F.2d 1114, 1122 (7th Cir. 1987) ("Section 1983 may be used as a vehicle for suing state housing officials, such as the head of [a state housing agency], for [the deprivation of] rights under federal housing law.").

Consistent with the due process requirements defined in *Goldberg v. Kelly*, 397 U.S. 254 (1970), federal housing regulations require that before a public housing authority terminates a voucher recipient's rent assistance, the recipient be provided with the following: (a) notice of the reason(s) for the decision, § 982.554(a); (b) an opportunity for informal review, § 982.554(b); (c) prompt written notice that the recipient may request an informal hearing §§ 982.555(a) and (c)(2); and (d) the opportunity to review relevant documents before the hearing and be present evidence at the hearing, §§ 982.555(e)(2) and (5). *See also Clark v. Alexander*, 85 F.3d 146, 150 (4th

Cir. 1996) ("Federal regulations set out the basic procedural requirements of informal hearings in almost literal compliance with *Goldberg*.").

If anything, the plaintiffs here allege facts that would actually *support* a finding that the termination process met these four requirements. First, plaintiffs allege that FRED informed the DCHA that they refused to sign a new lease, which indicates that plaintiffs received notice of the reason for termination, as do repeated suggestions that plaintiffs refusal to sign a renewal form for leasing despite repeatedly being told of the consequences. Second, the allegations that they received notice of the informal hearing via email suggest both that there was an opportunity for informal review *and* notice of the ability to request an informal hearing. Tellingly, plaintiffs do not deny actually receiving this email. Finally, the complaint includes no facts suggesting that plaintiffs were not afforded the opportunity to review documents and be present at the hearing.

Accordingly, plaintiffs have failed to state a claim that their Section 8 voucher termination occurred without the opportunity for due process review. *See* Fed. R. Civ. P. 8(a) (requiring a proposed amended complaint to set forth a case or controversy ripe for review and to set forth a "short an plain statement" of claims). Consequently, the court will not permit plaintiff to proceed on their Section 8 claim either. Even so, in light of plaintiffs' *pro se* status, the court will dismiss that claim without prejudice to their ability to file an amended complaint that corrects the deficiencies outlined above within thirty days of the date of this order.[3]

---

[3] In the event plaintiffs submit an amended complaint that adequately states a claim, the court will deem that amendment to relate back to their initial filing for statute of limitations purposes.

ORDER

IT IS ORDERED that:

1. Defendant DCHA's motion for screening/dismissal (dkt. #6) is GRANTED in part and DENIED in part.

2. Plaintiffs are DENIED leave to proceed on their claims in this lawsuit, and the complaint is DISMISSED without prejudice for failure to state a claim. The claim challenging the eviction process is DISMISSED with prejudice, and the claim related to the Section 8 housing voucher is DISMISSED without prejudice.

3. To proceed with the Section 8 claim, plaintiffs must file an amended complaint within thirty days of the date of this order. That proposed amended complaint must comply with the opinion set forth above.

4. If plaintiff submits an amended complaint in compliance with this order, the court will take that complaint under consideration for additional screening pursuant to 28 U.S.C. § 1915(e)(2). **If plaintiff fails to submit an amended complaint as directed, then this case will be closed without further notice pursuant to Fed. R. Civ. P. 41(b).**

Entered this 21st day of May, 2018.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge